Filed 11/19/13  Crow v. Sparks CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SHERYL CROW et al., | B243458 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. Nos. SS022570 and SS022509) |
| v. | |
| PHILLIP GORDON SPARKS, | |
| Defendant and Appellant. | |

APPEAL from the orders of the Superior Court of Los Angeles County, James K. Hahn, Judge.  Affirmed.

Phillip Gordon Sparks, in pro. per., for Defendant and Appellant.

Greenberg Traurig, Gregory A. Nylen and Nina D. Boyajian for Plaintiffs and Respondents.

_____

Plaintiffs and respondents Sheryl Crow and Harvey Weinstein sought restraining orders under Code of Civil Procedure section 527.6[1] prohibiting defendant and appellant Phillip Gordon Sparks from engaging in harassing conduct and requiring Sparks to stay at least 300 yards away from them. The trial court granted the requested orders after a hearing on August 14, 2012. Sparks timely appealed.[2] Sparks raises a number of contentions, none of which are supported by citations to the record or to legal authority. Because substantial evidence supports the trial court's orders, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2012, Sparks began writing disturbing and harassing posts about Crow, including claims that she had stolen $5.5 million from him, filmed him illegally, blacklisted him, broke into his apartment, and tried to have him arrested.

On July 5, 2012, Sparks sent an e-mail to several executives at The Weinstein Company again accusing Crow of blacklisting him and illegally filming him, purportedly for a show backed by The Weinstein Company. In the e-mail, Sparks stated he saw Weinstein shopping with his wife and daughter and was going to approach him to discuss his grievances, but decided against it. Sparks was homeless at the time and saw Weinstein in an alley where the homeless urinate. Sparks claims that Weinstein looked at him and said, "How do you like me taking your money, Phil?"

On July 16, 2012, Sparks sought assistance from the Screen Actors Guild-American Federation of Television and Radio Artists (SAG-AFTRA), claiming Crow and Weinstein broke into his apartment and stole $5.5 million from him. A SAG-AFTRA

---

[1]  All further statutory references are to the Code of Civil Procedure unless stated otherwise.

[2]  The trial court issued the restraining orders in case Nos. SS022509 (*Crow v. Sparks*) and SS022570 (*Weinstein v. Sparks*), which Sparks appealed in case Nos. B243458 and B243461, respectively. We granted Sparks's motion to consolidate the two appeals.

employee advised him that SAG-AFTRA could not assist and he should hire outside counsel. Sparks, frustrated that SAG-AFTRA would not assist him, said "I'll just shoot them" apparently referring to Crow and Weinstein.

On July 19, 2012, Sparks wrote a long and rambling comment on Facebook for SAG-AFTRA, again accusing Crow of illegally filming him and stealing $5.5 million from him. At the end of the post, Sparks wrote: "This is nothing but a cover up to ruin me by Sheryl Crow & Harvey Weinstein. But guess what: [¶] I ain't [*sic*] going nowhere . . . I am staying here until I get what is mine."

Crow filed a request for a restraining order on July 24, 2012, supported by declarations describing Sparks's harassing conduct and stating she did not know Sparks but was concerned Sparks might harm her, her family members, close friends, or employees. The trial court granted a temporary restraining order to remain in effect until a hearing on August 14, 2012. Sparks responded on August 7, 2012, reiterating many of his claims against Crow and Weinstein. His response also stated that he *agreed* to the requested orders. Weinstein's request for a restraining order was filed on August 8, 2012, supported by declarations substantially similar to Crow's. The court granted a temporary restraining order and consolidated the hearings on Crow's and Weinstein's requests on August 14, 2012.

At the hearing, counsel for Crow and Weinstein called Dr. David Glazer, a psychiatrist who testified that he had met and spoken to Sparks for about an hour and had reviewed the declarations submitted with the request for restraining orders. Based on the declarations and his conversation with Sparks, Dr. Glazer concluded that Sparks presented a clear and present danger to Crow and Weinstein. Sparks cross-examined Dr. Glazer. During cross-examination, Sparks claimed Dr. Glazer woke him up around 10:00 p.m on the Venice boardwalk and only spoke with him for ten minutes. He asked Dr. Glazer whether the doctor and Kevin Berman (who accompanied Dr. Glazer when he met with Sparks) worked for Crow and the studios, and whether they were in violation of the temporary restraining order when they approached him.

Sparks called Berman as a witness and asked whether Berman had pretended to be an attorney and had agreed to take Sparks's case against Crow. Berman testified that he did arrange a meeting with Sparks but never said he was an attorney and never advised Sparks on a case against Crow. Berman was in fact a security expert for Crow.

Sparks testified on his own behalf, explaining that he had met Crow on the beach in 2004, and he planned to sue her for $7.5 million and call David Arquette and Ugo, a Beverly Hills restaurateur, as witnesses against Crow. He further claimed that Ronni Chasen was brokering a deal with Crow and Weinstein to get his money back and get him on a reality show to redeem himself, but then she was murdered. During cross-examination, he testified that Crow had approached him at 2:30 a.m. and told him, "I'm going to kill you like we killed Ronni Chasen."

Before granting the orders, the trial court said to Sparks: "I noticed in your response, which I read very carefully as well as listened to you today, you said that you basically agreed to the orders that are being requested by both Mr. Weinstein and Ms. Crow." Sparks confirmed his agreement, stating: "I totally agree that we should stay away from each other." The court also asked Sparks whether he owned a gun, and Sparks stated he has never owned a gun. Sparks stated he was concerned about Crow stalking him. The court explained that if Sparks sees Crow or Weinstein or any member of their staff or family, "your responsibility is to just turn around and walk the other way. . . . If you do that, you won't be in violation of the restraining order."

## DISCUSSION

### A. Substantial Evidence Supports the Orders

In his timely appeal, Sparks challenges the restraining orders entered in favor of Crow and Weinstein. Sparks contends through various arguments that the trial court abused its discretion when it granted the restraining orders based on insufficient evidence.

4

Section 527.6 is intended to provide expedited relief to victims of harassment and is generally used when the victim has been stalked, threatened or otherwise seriously harassed. (*Nebel v. Sulak* (1999) 73 Cal.App.4th 1363, 1369.) To grant a restraining order under section 527.6, a court must find by clear and convincing evidence that unlawful harassment has taken place. (§ 527.6, subd. (i).) The statute defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (*Id.*, subd. (b)(3).)

We apply the substantial evidence standard of review to orders granted under section 527.6. (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) "We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Ibid.*)

Here, the trial court issued restraining orders prohibiting Sparks from engaging in a wide range of harassing activities and from being within 300 yards of Crow, Weinstein, and the employees and relatives listed in the orders. In doing so, the court considered the declarations submitted, Sparks's statement in response, and live testimony from Sparks, Berman, and Dr. Glazer. The declarations alone provided substantial evidence that Sparks engaged in a course of harassing conduct that would cause a reasonable person to suffer substantial emotional distress and did cause Crow and Weinstein to suffer such distress. (§ 527.6.) Sparks posted meritless accusations against both Crow and Weinstein, claims to have seen Weinstein with his family in Santa Monica, and admits to having threatened to shoot both of them.

Sparks contends that his civil rights were violated because he did not have the opportunity to cross-examine his accusers. Nothing requires a party seeking a restraining order to testify at the hearing, subject to cross-examination. Rather, "'[b]oth sides may

offer evidence by deposition, affidavit, or oral testimony, and the court *shall* receive such evidence, subject only to such reasonable limitations as are necessary to conserve the expeditious nature of the [hearing].' [Citations.]" (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 729, quoting *Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 733, fn. 6.)

Sparks also challenges the veracity of statements made both in written declarations and live testimony. We do not second-guess the trial court's conclusions about the credibility of witnesses or the reasonable inferences the court draws from the evidence before it. (*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622-623.)

Finally, Sparks argues the trial court based its decision solely on the fact that he agreed to the orders. Regardless of whether he agreed to the orders or not, the court's decision to grant plaintiffs' requests for restraining orders were supported by substantial evidence.

**B.     Sparks Forfeited His Challenge to Dr. Glazer's Testimony**

Sparks also contends the trial court should have ignored the testimony of Dr. Glazer because the doctor's license was revoked and he failed to meet the federal qualifications for expert testimony. Sparks forfeited his ability to raise these issues on appeal because he failed to raise them below. Generally, """"when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered." [Citation.]' . . . [Citation.]" (*Duronslet v. Kamps, supra,* 203 Cal.App.4th at p. 737.) "A party on appeal cannot successfully complain because the trial court failed to do something which it was not asked to do. [Citation.]" (*Farmer Bros. Co. v. Franchise Tax Bd.* (2003) 108 Cal.App.4th 976, 993.) The record on appeal does not contain any objection by Sparks about Dr. Glazer's qualifications. Sparks's contentions are forfeited.

## DISPOSITION

The orders are affirmed.  Costs on appeal are awarded to Crow and Weinstein.


KRIEGLER, J.


We concur:


MOSK, Acting P. J.


KUMAR, J.*

---

*        Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.